UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT GONZALEZ, on behalf of himself
And all other similarly situated

      Plaintiff,      Case No.: 12-cv-783 (ER)

v.

RELIN GOLDSTEIN & CRANE, LLP

      Defendant.
----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM RE ATTORNEYS FEES

Plaintiff applies for an award of costs and attorney's fees against Defendant for the successful resolution of this class action.

Fee-shifting under the FDCPA.

  The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq.* was enacted over three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy." Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts." § 1692(b), -(c).

  Congress encouraged consumers to bring FDCPA actions before a Federal Article III judge by eliminating any "amount in controversy" requirement. §1692k(d). Congress also

fostered enforcement of the FDCPA by enacting statutory damages and mandating that the debt collector pay the consumer's fees. 1692k(a)(3).

Article III judges are accustomed to monetarily significant cases between corporate parties who can afford to pay their attorneys. FDCPA cases give the average citizen the same dignity and quality of justice as the rich, but have a wider public interest impact on many consumers because of the incentives embedded in the FDCPA for compliance. The consumer may have had medical or marital or employment problems, or may have become entangled with predatory lenders or identity thieves. Yet, there is the comfort of knowing that the federal bench will apply the law to protect against scofflaws and accomplish the purposes of Congress.

Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self interest with the American Rule on the allocation of legal costs means that people can get away with small offenses. A two-day suspension may be unconstitutional, but a few hours of legal time costs more than the wages lost. Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids in the enforcement of rules of law. [citation omitted]. Put another way: Monetary awards understate the real stakes. Judicial decisions have effects on strangers. This litigation was prosecuted by a lawyer retained by a union of public employees and stoutly resisted by the county. If as the defendants say "only" $3,700 was at stake, why the tenacious resistance? Defendants do not contend that the exertion on plaintiff's side was unreasonable in relation to the defense; no more is necessary to show that the judge acted within his discretion in awarding fees exceeding the monetary recovery.

*Barrow v. Falck*, 977 F.2d 1100, 1103-04 (7th Cir. 1992).

Where, as here, an attorneys fee provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances." *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending). An award of fees is also mandatory in FDCPA cases. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"). Fees are mandatory even if there has been no award of actual or statutory damages. *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989).

Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorneys fees it may not be possible for them to pursue small claims .... [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs. *Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. App. 1984).

In *Nelson v. Select Financial Services, Inc.*, 2006 WL 1672889 (E.D. Pa. June 9, 2006), the court awarded some $24,000 in fees on a $1,000 statutory recovery. In *Gradisher v. Check*

*Enforcement Unit*, 2003 U.S. Dist. LEXIS 753 (W.D. Mich. 2003), the court awarded attorney fees of $69,872.00 where the plaintiff recovered FDCPA statutory damages of $1,000.00. In *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn. Sep 05, 2002) the court awarded the full lodestar fee request of over $43,000 at $250 per hour when the consumer received the maximum FDCPA statutory damages of $1,000. *In Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990), an FDCPA case, the court awarded over $10,000 in fees on a $1200 jury verdict, including 11 hours defending the fee petition. See also *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216 (D.N.J. 1999) (awarding over $57,000 in fees in an FDCPA case).

The amount involved and the results obtained. "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977). The results in this case are the maximum amount of statutory damages for the plaintiff and more than the maximum amount of damages available for the class because of the FDCPA's cap on class damages of 1% of the Defendant's net worth. Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 527 (2d Cir. 1991). The Second Circuit rejects the "proportionality" argument as the basis for a fee award. E.g., *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985); *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir. 1983).

Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., *City of Riverside*, 477 U.S. at 580 awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); *Grant v. Martinez*, 973 F.2d 96, 101

(2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); *United States Football League v. National Football League,* 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension). *Norton v. Wilshire Credit Corp.,* 36 F. Supp. 2d at 220 (rejecting proportionality in awarding $58,000 in fees in an FDCPA case).

In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." *Postow v. Oriental Bldg Ass'n,* 455 F. Supp. 781, 791 (D.D.C. 1978).

Purpose of fee award.

Congress enacted fee-shifting statutes to compensate "private attorneys general" and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. See H.R. Rep. No. 94-1558, at 2 (1976) (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (per curiam)); see generally S. Rep. No. 94-1011 (1976). The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, see generally S. Rep. No. 94-1011, not only to those whose cases make new law. *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir. 1999).

Attorneys fees are central to the enforcement of the Consumer Credit Protection Act (of which the FDCPA is a part) by private attorneys general. "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy to protect consumers from fraud in the used car business." *Fleet Inv. Co. v. Rogers*, 620 F.2d 792, 794 (10th Cir. 1980) (odometer law case).

Such fees are particularly important in consumer cases, under the principles discussed by the Supreme Court in Rivera, supra, a civil rights case. Consumer Credit Protection Act cases also support this proposition. See, e.g., *Ratner v. Chemical Bank*, 54 F.R.D. 412 (S.D.N.Y. 1972) ($20,000 fees, $100 damages). "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

A defendant should not be encouraged to litigate in the expectation that the Court will reduce the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court. *Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201, 207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law and encourages settlement).

An inadequate award diminishes the inducement created by fee-shifting statutes, and undermines the goal of promoting private representation in FDCPA actions. In language which could appropriately be applied to FDCPA actions, the Second Circuit noted:

A plaintiff who is successful in establishing certain practices as violative of his constitutional rights will deter officials from continuing this conduct, and thereby help assure that others are not subjected to similar constitutional deprivations. This deterrent effect of successful §1983 actions is wholly independent of the relief which the plaintiff seeks or is ultimately awarded, and therefore it is inappropriate to condition attorney's fee awards on the nature of the relief granted. *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir. 1983).

An award should be made at a rate which recognizes the vindication of public policy expressed in the FDCPA. "The award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a system of private attorneys general]." *James v. Home Constr. Co.*, 689 F.2d 1357, 1359 (11th Cir. 1982).

**CONCLUSION**

The Parties have agreed that subject to the Court's approval Plaintiff's Counsel is entitled to $15,000 in attorney's fees and costs. Plaintiff, as a "private attorney general," is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." This litigation accomplished the purposes of the FDCPA. Attorney's fees encourage defendants to comply with the FDCPA, as well as providing the consumer an incentive and the financial ability to bring FDCPA suits. *Postow*, 455 F. Supp. at 785, 786. Fees should be awarded as requested. Plaintiff respectfully requests that fees should be awarded as requested.

Dated: October 15, 2012
New York, NY

Respectfully Submitted,

*[signature]*

Shimshon Wexler